UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANDREA L. VAN VORST, KENNETH
MAHNKEN, YVETTE SOTO, and MARTIN J.
WEINER,

                    Plaintiffs,

     -against-

LUTHERAN HEALTHCARE d/b/a LUTHERAN
MEDICAL CENTER,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEFENDANT'S PROPOSED
JURY INSTRUCTIONS**

Docket No. 15 Civ. 1667 (LDH) (PK)

Defendant, NYU Langone Hospital – Brooklyn, sued herein as Lutheran HealthCare d/b/a Lutheran Medical Center, by its attorneys, Garfunkel Wild, P.C., respectfully requests that the following instructions be read to the jury before the commencement of deliberations:

## JURY INSTRUCTION NO. 1

### (Elements of Plaintiffs' Claims)

I will now proceed to instruct you on the substantive elements of Plaintiffs' claims. Each of the Plaintiffs claims that Defendant, NYU Langone Hospital – Brooklyn, formerly known as Lutheran Medical Center, violated his or her rights under the Americans with Disabilities Act, the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law. To succeed on his or her claims under these statutes, each Plaintiff must prove four elements by a preponderance of the evidence:

     1.     That he or she has a disability;

2.    That he or she is otherwise qualified to participate in Lutheran's programs or services;

3.    That Lutheran receives federal financial assistance (applies to the Rehabilitation Act claim only); and

4.    That Lutheran discriminated against him or her on the basis of his or her disability.

In this lawsuit, there is no dispute that (1) each of the Plaintiffs is deaf, and thus has a disability; and (2) Lutheran receives federal financial assistance. Therefore, you will be deciding only whether each of the Plaintiffs has satisfied the second element – that he or she is otherwise qualified to participate in Lutheran's programs and services – and the fourth element – that Lutheran discriminated against him or her on the basis of his or her disability – by a preponderance of the evidence.

Authorities:   29 U.S.C. § 794; 42 U.S.C. § 12182; *Wright v. N.Y. State Dep't of Corrections*, 831 F.3d 64, 72 (2d Cir. 2016); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275, 277-78 (2d Cir. 2009); *Williams v. City of New York*, 121 F. Supp. 3d 354, 364 n.10 (S.D.N.Y. 2015)

## JURY INSTRUCTION NO. 2

### (Qualified Individuals)

The second element requires that each of the Plaintiffs prove, by a preponderance of the evidence, that he or she is "otherwise qualified" to participate in and benefit from the services and programs offered by Lutheran. In order to be a "qualified individual" with a disability, each Plaintiff must meet the essential eligibility requirements for the service, program, or activity at issue. A disabled person would not meet the essential eligibility requirements for a particular

2

service, program, or activity if he or she could not participate in the service, program, activity even with a reasonable accommodation.   A reasonable accommodation may include an "auxiliary aid or service" that makes the service, program, or activity readily accessible to and usable by individuals with disabilities.

There is a dispute between the parties here as to whether all of the Plaintiffs were "qualified individuals" to participate in their medical care and treatment at the Hospital. Specifically, Lutheran contends that one or more of the Plaintiffs would not have been able to effectively communicate with Hospital physicians and staff even if they received the auxiliary aids and services that Plaintiffs contend that they failed to receive.  That dispute is up to you to decide.

Authorities:   *McElwee v. County of Orange*, 700 F.3d 635, 642-43 (2d Cir. 2012); *Castellano v. City of New York*, 946 F. Supp. 249, 253 (S.D.N.Y. 1996), *aff'd*, 142 F.3d 58 (2d Cir. 1998); 28 C.F.R. § 36.303; 45 C.F.R. §§ 84.3 & 84.52

## JURY INSTRUCTION NO. 3

### (Discrimination)

Discrimination, in the context of Plaintiffs' claims, means that they were denied the full and equal enjoyment of Lutheran's services, facilities, privileges, advantages, or accommodations, or that Lutheran failed to take necessary steps to ensure that they were not segregated, excluded, or otherwise treated differently than other individuals, because of their disability.

Each of the Plaintiffs may demonstrate discrimination by proving that Lutheran failed to provide him or her with "auxiliary aids and services" necessary to ensure that he or she could effectively communicate with Lutheran's physicians and staff in order to participate in his or her

3

medical care at the Hospital.  Auxiliary aids and services include, but are not limited to, qualified sign language interpreters either on-site or through video remote interpreting services, written materials, the exchange of written notes, and other effective methods or making aurally delivered information available to individuals who are deaf or hard of hearing.  When considering which auxiliary aids and services are "necessary" to ensure effective communication for each of the Plaintiffs, you may consider:

- The method of communication used by the Plaintiff;

- The ability or inability or the Plaintiff to communicate in other ways;

- The nature, length, and complexity or the communication involved; and

- The context in which the communication took place.

Although a hospital should consult with deaf individuals as to their preferred service, the ultimate decision of which auxiliary aid or service to provide rests with the hospital, so long as it results in effective communication.  A hospital that chooses to provide qualified sign language interpreters through a video remote interpreting service must also ensure that it provides real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection; a sharply delineated image that is large enough to display the face, arms, hands, and fingers of both the interpreter and the deaf individual; a clear, audible transmission of voices; and adequate training to users of the technology.

Effective communication is a practical standard, which does not require perfect communication.  In determining whether each Plaintiff was able to communicate while at Lutheran, you should focus on whether that Plaintiff had the opportunity to communicate

4

relevant information with Hospital physicians and staff.  At issue in this case is not the quality of the medical care or the ultimate treatment outcomes, but whether each Plaintiff had an equal opportunity to participate in obtaining and utilizing Lutheran's services.   In order for aids, benefits, or services to be equally effective, there are not required to produce the identical result or level of achievement for disabled and nondisabled persons, but must afford disabled persons the *opportunity* to obtain the same result, to gain the same benefits, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs.

A hospital cannot require an individual with a disability to bring another individual to interpret for him or her.  However, a hospital may rely on an adult companion to interpret or facilitate effective communication where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.

If you find, by a preponderance of the evidence, that Lutheran did not discriminate against any one of the Plaintiffs on the basis of his or her disability, then you must enter a verdict for Lutheran and against that Plaintiff.

Authorities:   29 U.S.C. § 794; 42 U.S.C. § 12182; *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1086-87 (11th Cir. 2007); *Gevarzes v. City of Port Orange, Fla.*, 2013 WL 6231269, at *2 (M.D. Fla. Dec. 2, 2013), *aff'd*, 579 F. App'x 957 (11th Cir. 2014); 28 C.F.R. § 36.303; 45 C.F.R. § 84.52

## JURY INSTRUCTION NO. 4

### (Discriminatory Intent)

In order to recover damages on any of their claims, each of the Plaintiffs must also prove, by a preponderance of the evidence, that Lutheran acted with discriminatory intent. This does not mean that Lutheran must have acted with personal ill will or animosity toward any of the Plaintiffs. Rather, you may find that Lutheran acted with discriminatory intent if you find that it was at least deliberately indifferent to the strong likelihood of a violation of any of the Plaintiffs' rights.

Deliberate indifference must be a deliberate choice, rather than a simple mistake or bureaucratic inaction. To prove that Lutheran acted with deliberate indifference, each Plaintiff must demonstrate that Lutheran had actual knowledge of discrimination against him or her. It is insufficient for a Plaintiff to prove simply that Lutheran knew that he or she has a disability and failed to provide him or her with an accommodation. Rather, each Plaintiff must prove that Lutheran failed to act in the face of actual knowledge that he or she requires an interpretive aid to communicate, under such circumstances where the level of indifference is so pervasive as to amount to a choice by Lutheran to deny that Plaintiff's rights.

In addition, to prove that Lutheran acted with deliberate indifference, each Plaintiff must demonstrate that Lutheran's policymakers or officials were on notice of potential violations of his or her rights. It is insufficient for a Plaintiff to show that any particular employee of Lutheran knew that his or her rights were being violated, without regard to where that person stood in Lutheran's employee hierarchy. Lutheran is only liable for the deliberate indifference of individuals whose actions can fairly be said to represent the actions of the Hospital.

6

You may find that Lutheran acted with deliberate indifference if you find that policymakers at the Hospital had actual knowledge of discrimination against any of the Plaintiffs, had authority to correct the discrimination, and deliberately failed to respond at all or responded so inadequately as to amount to a deliberate failure to respond. However, you may also consider certain mitigating factors, such as whether the Hospital had a policy and procedure to provide auxiliary aids and services to deaf and hard of hearing individuals, whether Lutheran's staff made attempts to secure requested services, and whether Plaintiffs were provided interpreting services on other occasions.

Authorities:    *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Berry-Mayes v. New York City Health & Hosps. Corp.*, 712 F. App'x 111, 112 (2d Cir. 2018); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275-79 (2d Cir. 2009); *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007); *Williams v. City of New York*, 121 F. Supp. 3d 354, 364 n.10 (S.D.N.Y. 2015); *Biondo v. Kaleida Health*, 2018 WL 1726533, at *4-6 (W.D.N.Y. Apr. 10, 2018); *Viera v. City of New York*, 2018 WL 4762257, at *16-19 (S.D.N.Y. Sept. 30, 2018)

## JURY INSTRUCTION NO. 5

### (Compensatory Damages)

If, and only if, you find that Lutheran intentionally discriminated against any of the Plaintiffs in violation of the Rehabilitation Act, the New York State Human Rights Law, or the New York City Human Rights Law, then you may award each such Plaintiff compensatory damages. The fact that I am giving you instructions concerning the issue of damages should not be interpreted as an indication that I believe that that any of the Plaintiffs should or should not prevail in this case. Instructions as to the measure of damages are given for your guidance in the event that you should find in favor of any of the Plaintiffs based on a preponderance of the evidence.

7

5128339v.4

Compensatory damages are awarded to compensate a Plaintiff for emotional distress and mental anguish, as well as any expenses that Plaintiff had because of Lutheran's violation of the law. Although Plaintiffs seek recovery of damages under more than one statute, they are each permitted to obtain only one recovery for violation of any or all of those statutes.

In considering Plaintiffs' compensatory damages, you should determine the amount, if any, that has been proven by each Plaintiff by a preponderance of the evidence as full, just, and reasonable compensation for that Plaintiff's damages as a result of Lutheran's failure to provide effective communication, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Lutheran. Also, compensatory damages must not be based on speculation or guesswork.

Damages for emotional distress and mental anguish cannot be assumed simply because discrimination has occurred. Rather, each Plaintiff must provide competent evidence that he or she suffers from concrete emotional problems resulting from Lutheran's discrimination. Hurt feelings, anger, and frustration are part of life and are not the types of harm that could support an emotional distress or mental anguish award. In addition, to recover damages under the Rehabilitation Act, each Plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress or the objective circumstances of the violation itself.

To determine whether and how much a Plaintiff should recover for emotional pain and mental anguish, you may consider the nature, character, seriousness, duration, and consequences of any injury – tangible or intangible. Plaintiffs do not have to introduce evidence of a monetary value for intangible things like mental anguish. You will determine what amount fairly

8

compensates the Plaintiff for his or her claim.  There is no exact standard to apply, but the award should be fair in light of the evidence.

Authorities:  *Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002); *Annis v. County of Westchester*, 136 F.3d 239, 249 (2d Cir. 1998); *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996); *MacMillan v Millennium Broadway Hotel*, 873 F Supp. 2d 546, 560 (S.D.N.Y. 2012); *Dejesus v. Vill. of Pelham Manor*, 282 F. Supp. 2d 162, 178 (S.D.N.Y. 2003); *E.E.O.C. v. Yellow Freight Sys., Inc.*, 2002 WL 31011859, at *33 (S.D.N.Y. Sept. 9, 2002); *Cullen v. Nassau County Civil Serv. Comm'n*, 53 N.Y.2d 492, 497, 442 N.Y.S.2d 470, 473 (1981); Eleventh Circuit Civil Pattern Jury Instructions, § 4.12 (2018); Fifth Circuit Civil Jury Instructions, § 10.12 (2014)

## JURY INSTRUCTION NO. 6

### (Punitive Damages)

In addition to compensatory damages, the New York City Human Rights Law permits a jury, under certain circumstances, to award punitive damages.  If you decide in favor of any of the Plaintiffs under the New York City Human Rights Law, you must decide, as to each such Plaintiff, whether he or she has proven, by clear and convincing evidence, that Lutheran's conduct was wanton and recklessness or malicious.  Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations.  Punitive damages are meant to address wrongful conduct that goes beyond mere negligence, and are warranted only where aggravating factors demonstrate an additional level of wrongful conduct.  This is a higher standard, and requires a greater amount of proof, than the deliberate indifference standard that each Plaintiff must satisfy to be awarded compensatory damages.  The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant for wrongful conduct and to discourage others from acting in a similar way in the future.

9

An act is malicious when it is done deliberately with knowledge of the plaintiff's rights, and with the intent to interfere with those rights.  An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety, and rights of others.  If you find that Lutheran's acts were not wanton and recklessness or malicious, you need proceed no further in your deliberations on this issue.  On the other hand, if you find that Lutheran's acts were wanton and recklessness or malicious, you may, but are not required to, award punitive damages.

If you decide to award punitive damages, you should consider the nature and reprehensibility of Lutheran's conduct; whether Lutheran demonstrated an indifference to, or a reckless disregard of, the health, safety, or rights of others; whether Lutheran acted with an improper motive or vindictiveness; whether Lutheran's conduct constituted outrageous or oppressive intentional misconduct; how long the conduct went on; Lutheran's awareness of what harm the conduct caused or was likely to cause; any concealment or covering up of Lutheran's wrongdoing; how often Lutheran had committed similar acts of this type in the past and the actual and potential harm created by Lutheran's conduct, including the harm, if any, to individuals other than Plaintiffs.  However, although you may consider the harm to individuals other than Plaintiffs in determining the extent to which Lutheran's conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish Lutheran for any harm caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by each Plaintiff, and to the compensatory damages you awarded each Plaintiff.  The reprehensibility of Lutheran's conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in

10

view of the harm suffered by Plaintiffs and the compensatory damages you have awarded

Plaintiffs.

Authorities:    *Randi A.J. v. Long Island Surgi-Ctr.*, 46 A.D.3d 74, 86, 842 N.Y.S.2d 558, 568
(2d Dep't 2007); *Munoz v. Puretz*, 301 A.D.2d 382, 384, 753 N.Y.S.2d 463, 466
(1st Dep't 2003); N.Y. Pattern Jury Instructions – Civil, § 2:278 (2018)

\*       \*       \*       \*

Defendant reserves the right to propose additional jury instructions at a subsequent date

up to and including the time of trial.

Dated: Great Neck, New York
January 4, 2019

GARFUNKEL WILD, P.C.
*Attorneys for Defendant*

By: _____
Roy W. Breitenbach
Marc A. Sittenreich
Nicholas M. Summo
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

11