# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREA L. VAN VORST, KENNETH MAHNKEN, YVETTE SOTO, and MARTIN J. WEINER, <br><br> *Plaintiffs*, <br><br> v. <br><br> LUTHERAN HEALTHCARE d/b/a LUTHERAN MEDICAL CENTER, <br><br> *Defendant*. | No. 15-cv-1667 (LDH) (PK) <br><br> **PLAINTIFFS' PROPOSED JURY INSTRUCTIONS** |

In accordance with Federal Rule of Civil Procedure 51 and this Court's minute entry dated October 2, 2018, Plaintiffs submit the following proposed jury instructions. Under Rule IV.B.2. of the Court's Individual Practices, "[r]equests to charge should be limited to elements of the claims, the damages sought, and defenses." Plaintiffs reserve the right to submit additional or modified jury instructions at the close of the case based on the events of the trial and the evidence presented and admitted.

Dated: January 4, 2019

Andrew Rozynski, Esq.
David John Hommel, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
*Attorneys for Plaintiffs*

**Proposed Charge No. 1: Claims under Title III of the Americans with Disabilities Act**

Under the Americans with Disabilities Act (or the "ADA" for short), it is unlawful to discriminate against people on the basis of disability and prevent them from gaining full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. To succeed on an ADA claim, Plaintiffs must prove each of the following three elements by a preponderance of the evidence: (1) Plaintiff has a disability; (2) Defendant owns or operates a place of public accommodation; and (3) Defendant discriminated against the Plaintiff by denying him or her a full and equal opportunity to enjoy the services Defendant provides.

The parties have agreed that the first two elements—that Plaintiffs have a disability and that Defendant owns or operates a place of public accommodation—are not disputed. But you will need to decide the third element: whether Defendant's actions were discriminatory.

To comply with the third element, Defendant was obligated to provide appropriate auxiliary aids and services necessary to ensure effective communication between each Plaintiff and the hospital staff throughout the course of his or her treatment. Effective communication is a two-way street, requiring all parties to be able to receive information from, and convey information to, one another. Under ADA regulations, it is Defendant's duty to provide auxiliary aids and services for its patients and their companions or family members. Failure to provide the auxiliary aids and services that a deaf person needs amounts to discrimination under the ADA. Furthermore, a request for an accommodation is not required where the disabled individual's need for an accommodation is obvious.

As relevant in this case, "auxiliary aids and services" include "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing

impairments," such as a Video Remote Interpreting system (or "VRI" for short). A VRI system is essentially a live web cam—that is, an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images. According to the appropriate regulations, a VRI system can satisfy interpretive obligations if all of the following specifications are met:

> (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;
>
> (2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position;
>
> (3) A clear, audible transmission of voices; and
>
> (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI.

There are a few other points to address. First, even if the hospital staff believed that they were communicating effectively with a Plaintiff on any particular occasion, their opinion is irrelevant. Also, the fact that a Plaintiff's treatment was ultimately successful is also irrelevant. Finally, with two exceptions, reliance on a family member for interpretive assistance is not an adequate substitute for an appropriate auxiliary aid. The two exceptions are (i) an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or (ii) where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.

If you find that a Plaintiff has proven the third element by a preponderance of the evidence, then your verdict should be in favor of that Plaintiff.

**Authority**: 42 U.S.C. § 12182(a); 28 C.F.R. § 36.104; 28 C.F.R. § 36.303(b)(1) & (c)(1) & (c)(3) & (f); 45 C.F.R. § 84.52(c); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003); *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834, 837 n.9 (11th Cir. 2017); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 387 (E.D.N.Y. 2017); *Alexiadis v. New York Coll. of Health Professions*, 891 F. Supp. 2d 418, 427 (E.D.N.Y. 2012); *Brown v. Cty. of Nassau*, 736 F. Supp. 2d 602, 618–19 (E.D.N.Y. 2010); *Pierce v. D.C.*, 128 F. Supp. 3d 250, 269–70 (D.D.C. 2015); *Borngesser v. Jersey Shore Med. Ctr.*, 774 A.2d 615, 621 (N.J. Super. Ct. App. Div. 2001); Joint Pre-Trial Order, ECF No. 38 (raising no issues of a qualified-individual requirement); Proposed Stipulation of Fact & Law, ECF No. 38-1; Def.'s Br. in Support of Summ. J. at 4 n.2, ECF No. 51-96 ("For the purposes of this motion, Lutheran does not dispute that Plaintiffs are qualified individuals with disabilities, or that the Hospital is subject to the ADA and the RA."); Pl.'s Br. in Opp'n to Summ. J. at 5, ECF No. 51-110 ("The first two elements of Plaintiffs' claims herein—that Plaintiffs are disabled, and that Defendant is subject to the applicable laws—are not disputed.").

## Proposed Charge No. 2: Discrete and Independently Wrongful Acts

A hospital denies effective communication whenever a patient cannot communicate medically relevant information effectively with medical staff. Each denial of effective communication is a discrete and independently wrongful act, creating a separate violation of state and federal law. You are to look at all visits and see if there was any medically relevant information that was not conveyed effectively to a Plaintiff due to Defendant's failure to provide effective auxiliary aids or services .

**Authority**: *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017); *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 870 (9th Cir. 2014); *Innes v. Bd. of Regents of Univ. Sys. of Md.*, 29 F. Supp. 3d 566, 573–74 (D. Md. 2014); *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 15–16 (D.D.C. 2007).

**Proposed Charge No. 3: Claims under Section 504 of the Rehabilitation Act**

Under Section 504 of the Rehabilitation Act, it is unlawful for an otherwise qualified individual with a disability to be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance solely by reason of her or his disability.

It is undisputed that Defendant receives federal financial assistance. Otherwise, the ADA and the Rehabilitation Act claims are judged under the same standards. Thus, if you determine that a Plaintiff has established all three elements in his or her ADA claim, then you will find Defendant also liable under Rehabilitation Act. You will then be asked to determine whether the Plaintiff is entitled to the recovery of damages under the Rehabilitation Act.

To evaluate whether a Plaintiff is entitled to compensatory damages under the Rehabilitation Act, you will need to determine whether Defendant intentionally discriminated against Plaintiff (or in other words, acted with deliberate indifference). Intentional discrimination or deliberate indifference arises when persons at the hospital had actual knowledge of discrimination against the Plaintiff, had authority to correct the discrimination, and failed to respond adequately. In other words, intentional discrimination (or deliberate indifference) arises if the relevant hospital personnel:

(i)   disregarded requests for interpreters; or

(ii)  failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

(iii) opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, and so on—despite knowing that these other methods were ineffective.

Showing deliberate indifference does not require ill will or personal animosity. That is because federal antidiscrimination statutes aim to eradicate discrimination that arises from apathetic attitudes rather than affirmative animus.

**Authority**: 29 U.S.C. § 794; *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 272, 275–77 (2d Cir. 2009); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011); *Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 78 n.2 (2d Cir. 2000); *Williams v. City of New York*, 121 F. Supp. 3d 354, 364 n.10 (S.D.N.Y. 2015); *Pierce v. D.C.*, 128 F. Supp. 3d 250, 279 (D.D.C. 2015); *Falls v. Prince George's Hosp. Ctr.*, No. 97-1545, 1999 WL 33485550, 1999 U.S. Dist. LEXIS 22551, at *32 n.10 (D. Md. Mar. 16, 1999); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 828–29 (D. Md. 1998); *Van Vorst v. Lutheran Healthcare*, No. 15-CV-01667 (LDH) (PK), at 7 (E.D.N.Y. Sept. 26, 2018) ("Plaintiffs have adduced evidence . . . supporting their claim that Hospital staff knew that Plaintiffs needed interpretive services; that Plaintiffs requested interpretive services on numerous occasions to no avail; that Hospital staff, including at least one official, . . . was aware of the technical issues with the VRI system; and that some staff "shrugged" or didn't answer at all when Plaintiffs asked for interpretative services or complained about the VRI system's technical shortcomings.") (citations omitted); Proposed Stipulation of Fact & Law, ECF No. 38-1; Pl.'s Br. in Opp'n to Summ. J. at 5, ECF No. 51-110 ("The first two elements of Plaintiffs' claims herein— that Plaintiffs are disabled, and that Defendant is subject to the applicable laws—are not disputed.").

**Proposed Charge No. 4: Claims under New York State Human Rights Law**

Because the parties already agree that Plaintiffs have a disability and Defendant owns or operates a place of public accommodation, each Plaintiff need only prove that Defendant's actions were discriminatory under the New York State Human Rights Law (or the "NYSHRL" for short). Under that statute, it is unlawful to discriminate—either directly or indirectly—by denying a deaf person effective auxiliary aids or services or making them feel disregarded because of his or her disability. If you find that a Plaintiff has proven unlawful discrimination by a preponderance of the evidence, then your verdict should be in favor of the Plaintiff on this claim.

If you determine that a Plaintiff has established the third element of her New York Human Rights Law claim, you will then be asked to determine whether the Plaintiff is entitled to recover of compensatory damages. Unlike the Rehabilitation Act, the NYSHRL does not require you to find deliberate indifference or intentional discrimination to award damages to Plaintiff. This means that if you find Defendant liable, then you may award damages to the Plaintiff, regardless of whether Defendant's actions were intentional.

**Authority**: N.Y. Exec. L. § 296(2)(a); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277–78 (2d Cir. 2009); *United States v. City of New York*, 897 F. Supp. 2d 30, 41 (E.D.N.Y. 2012); *Williams v. City of New York*, 121 F. Supp. 3d 354, 364 n.10 (S.D.N.Y. 2015).

### Proposed Charge No. 5: Claims under New York City Human Rights Law

Separate from the federal and state law, you must determine whether Defendant is liable under the broader protection of the New York City Human Rights Law (or the "NYCHRL" for short). This statute is intended to be more protective than the federal and state laws that I just explained. This means that Defendant may be liable under the NYCHRL, even if they are not liable under federal or state laws. To show discrimination under the City law, the Plaintiff need only show one of the following:

(i) treated her "less well" than other non-deaf patients because of his or her disability; or

(ii) failed to ensure effective communication between the Plaintiff and the hospital staff; or

(iii) failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

(iv) opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective; or

(v) failed to ensure that the Video Remote Interpreting system met the required specifications if a sign language interpreter was unavailable; or

(vi) excluded him or her from participating in, or denied him or her the benefits of, Lutheran Medical Center's services, programs, or activities because of his or her disability.

Under the New York City Human Rights Law, it is unlawful for Defendant to deny a person because of disability the full and equal enjoyment of any of its services, and it is Defendant's duty to provide a reasonable accommodation to allow a person with a disability to enjoy her rights.

Unlike the Rehabilitation Act, the NYCHRL does not require you to deliberate indifference or intentional discrimination to award damages to Plaintiff. This means that if you find Defendant

9

liable for any of the actions that I just explained to you, then you may award damages, including punitive damages, to Plaintiff, regardless of whether Defendant's actions were intentional.

**Authority**: N.Y.C. Admin. Code § 8-502(a); N.Y.C. Admin. Code § 8-107(4)(1)(a); *Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102, 109–10 (2d Cir. 2013); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277–78 (2d Cir. 2009); *Fair Hous. Justice Ctr., Inc. v. Allure Rehab. Servs. LLC*, No. 15 CV 6336 (RJD) (LB), 2017 WL 4297237, 2017 U.S. Dist. LEXIS 157882, at *9–18 (E.D.N.Y. Sept. 26, 2017); *Viera v. City of New York*, No. 15 Civ. 5430 (PGG), 2017 U.S. Dist. LEXIS 113978, at *52–55 (S.D.N.Y. July 20, 2017); *United States v. City of New York*, 897 F. Supp. 2d 30, 41 (E.D.N.Y. 2012); *Pierce v. D.C.*, 128 F. Supp. 3d 250, 279 (D.D.C. 2015); *Falls v. Prince George's Hosp. Ctr.*, No. 97-1545, 1999 WL 33485550, 1999 U.S. Dist. LEXIS 22551, at *32 n.10 (D. Md. Mar. 16, 1999); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 828–29 (D. Md. 1998).

## Proposed Charge No. 6: Compensatory Damages

Compensatory damages is the amount of money to compensate a Plaintiff for the discrimination that he or she experienced. Experience of discrimination itself causes an injury—a deprivation of one's rights—that can be monetarily compensated.

You may also compensate a Plaintiff for any emotional pain and suffering, humiliation, embarrassment, inconvenience, pain, and frustration that he or she has suffered because of Defendant's violations of his or her rights. Even if the Plaintiff did not suffer any economic loss because of the discrimination, you may still compensate him or her for the deprivation of her rights or any emotional suffering.

When considering the issue of compensatory damages, you should determine what amount has been proven by each Plaintiff by a preponderance of the evidence as a result of Defendant's discriminatory treatment. The award should be fair in light of the evidence. You can take into account a Plaintiff's own testimony regarding his or her emotional suffering to determine the amount of compensation. You can also consider other witness' testimony and objective circumstances that may corroborate the Plaintiff's testimony. You must use sound discretion in drawing reasonable inferences when you find them appropriate from the facts and circumstances in evidence.

While compensatory damages must not be based on speculation or guesswork, there is no exact standard for determining the compensation for each Plaintiff's pain and suffering. The amount of compensatory damages should be guided by common sense.

**Authority**: 29 U.S.C. § 794(a); N.Y. Exec. L. § 297(9); N.Y.C. Admin. Code § 8-502(a); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 2778 (2d Cir. 2009); *Stamm v. N.Y.C. Transit Auth.*, No. 04-CV-2163 (SLT) (JMA), 2013 U.S. Dist. LEXIS 8534, at *11–21 (E.D.N.Y. Jan. 22, 2013); *Williams v. Blvd. Lines, Inc.*, No. 10 Civ. 2924, 2013 WL 5652589, 2013 U.S. Dist. LEXIS

11

149707, at *18–19 (S.D.N.Y. Sep. 30, 2013); *Toth v. Barstow Unified Sch. Dist.*, No. 12 Civ. 2217, 2014 U.S. Dist. LEXIS 169669, at *7–8 n.11 (C.D. Cal. Dec. 8, 2014); *Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000).

## Proposed Charge No. 7: Nominal Damages

If you find in favor of a Plaintiff for his or her Rehabilitation Act claim but do not find that the damages have monetary value or that Defendant acted with discriminatory intent or deliberate indifference, then you must return a verdict for the plaintiff on her discrimination claim in the nominal amount of $1.00.

**Authority**: *Tolbert v. Queens Coll.*, 242 F.3d 58, 74 (2d Cir. 2001); *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 110–11 (2d Cir. 2001).

**Proposed Charge No. 8: Punitive Damages**

If you find for Plaintiffs, you may award punitive damages under the NYCHRL. The purpose of punitive damages is two-fold: to punish a defendant and to deter similar acts in the future. You may award punitive damages if you find that Defendant's actions were reckless or in conscious disregard of Plaintiffs' rights. Put another way, Plaintiffs need not show intentional discrimination the NYCHRL requires neither a showing of malice nor awareness of the violation of a protected right.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.

**Authority**: N.Y.C. Admin. Code § 8-502(a); *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018); *Infantolino v. Joint Indus. Bd. of the Elec. Indus.*, 582 F. Supp. 2d 351, 363 (E.D.N.Y. 2008); *Murray v. Miron*, No. 3:11 CV 629 (JGM), 2015 WL 4041340, 2015 U.S. Dist. LEXIS 85260, at *12–13 (D. Conn. July 1, 2015).

## **Proposed Charge No. 9: The Role of Interpreters in the Courtroom**

We are going to have sign language interpreters assist us throughout these proceedings. You should know what they can do and what they cannot do. They are not a party in the case; they have no interest in the case, and they will be completely neutral. The interpreters are not working for either party. Their sole responsibility is to enable us to communicate with each other.

The interpreters will assist the Court with the testimony of the witnesses who are deaf and who will be communicating using American Sign Language or what is also known as "ASL." The procedure for such a witness is that the attorney will ask the witness a question, the question will then be interpreted into ASL by the interpreter for the witness, the witness will testify in ASL, and the interpreter will then inform the jury and the Court what that witness has said. During this process, the interpreter is required to translate between English and ASL accurately and impartially to the best of the interpreter's skill and judgment.

You may notice that the witness who is deaf may also communicate using what appears to be exaggerated facial expressions or hand gestures. This is a necessary part of American Sign Language. Grammar is conveyed through these facial expressions and gestures. You should not place any negative implications on these expressions or gestures, even if they appear to be exaggerated or unusual to persons who do not communicate using ASL. When there is an interpreter, the process of taking testimony is a bit different. An interpreter must listen to the entire question before beginning to interpret to ensure that the entire question is interpreted accurately. American Sign Language is very different from English. Sometimes, there are no ASL signs for English words, so the entire question must be interpreted as a whole. The process is reversed for answers.

You must evaluate interpreted witness testimony as you would any other testimony. That is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English. You must not make any assumptions that a witness is less credible because that witnesses relies on the assistance of an interpreter to communicate.

You must also treat the interpretation of the witness's testimony as if the witness had spoken themselves and no interpreter was present. Do not allow the fact that testimony was given through an interpreter to influence you in any way.

You must consider evidence provided through only the official court interpreters because it is important that all jurors consider the same evidence. So even if some of you know American Sign Language, you must accept the English interpretation provided and disregard any different meaning.

**Authority**: Jury Instructions, *Arce v. Louisiana*, No. 2:16-cv-14003-LMA-KWR, ECF No. 170-1 at 20–21; Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 1.3 – Official English Translation/Interpretation, http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructionsCurrentComplete.pdf?revDate=20181015 (last accessed Jan. 4, 2019); *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1026–27 (S.D.N.Y. 1995); *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1006 (9th Cir. 2010).