# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREA L. VAN VORST, KENNETH MAHNKEN, YVETTE SOTO, and MARTIN J. WEINER,<br><br>                  *Plaintiffs*,<br><br>v.<br><br>LUTHERAN HEALTHCARE d/b/a LUTHERAN MEDICAL CENTER,<br><br>                  *Defendant*. | No. 15-cv-1667 (LDH) (PK)<br><br>**PLAINTIFFS' PROPOSED VERDICT SHEETS** |

In accordance with Federal Rule of Civil Procedure 51 and this Court's minute entry dated October 2, 2018, Plaintiffs submit the following proposed verdict sheets. Plaintiffs reserve the right to submit modified verdict sheets at the close of the case based on the events of the trial and the evidence presented and admitted.

| | |
|---|---|
| Dated: January 4, 2019 | Andrew Rozynski, Esq.<br>David John Hommel, Esq.<br>EISENBERG & BAUM, LLP<br>24 Union Square East, Fourth Floor<br>New York, NY 10003<br>Tel: (212) 353-8700<br>Fax: (212) 353-1708<br>*Attorneys for Plaintiffs* |

**Plaintiff:** Andrea L. Van Vorst

> **I. New York City Human Rights Law**

1. Did Ms. Van Vorst prove by a preponderance of the evidence that Defendant discriminated against her—at any point during her medical care—by doing any of the following:

   (i) treated her "less well" than other non-deaf patients because of her disability; or

   (ii) failed to ensure effective communication between her and the hospital staff; or

   (iii) failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

   (iv) opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective; or

   (v) failed to ensure that the Video Remote Interpreting system met the required specifications if a sign language interpreter was unavailable; or

   (vi) excluded her from participating in, or denied her the benefits of, Lutheran Medical Center's services, programs, or activities because of her disability.

☐ YES           ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Ms. Van Vorst has no damages, please write in the nominal amount of $1.00.*

3. Did Ms. Van Vorst prove by a preponderance of the evidence that Defendant's actions were reckless or in conscious disregard of her rights?

☐ YES           ☐ NO

*If you answered "YES," please go to the next question to award punitive damages.*

4. What is the amount of punitive damages that is appropriate for Defendant's actions and will sufficiently deter them from future discriminatory conduct?

$ _____

## II. Americans with Disabilities Act

1. Did Ms. Van Vorst prove by a preponderance of the evidence that Defendant discriminated against her—at any point during her medical care—by doing any of the following:

    (i)    failed to ensure effective communication between her and the hospital staff; or

    (ii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iii)    excluded her from participating in, or denied her the benefits of, Lutheran Medical Center's services, programs, or activities because of her disability.

☐ YES          ☐ NO

## III. New York State Human Rights Law

*If you answered "YES" in Section II, please evaluate whether Ms. Van Vorst should receive damages under state law.*

1. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Ms. Van Vorst has no damages, please write in the nominal amount of $1.00.*

## IV. Rehabilitation Act

1. Did Ms. Van Vorst prove by a preponderance of the evidence that Defendant intentionally discriminated against her because of her disability?

Intentional discrimination (or deliberate indifference) arises when a person at the hospital had actual knowledge of discrimination, had authority to correct the discrimination, and failed to respond adequately.

In other words, intentional discrimination (or deliberate indifference) arises if the relevant hospital personnel:

    (i)    offered an apathetic response when Ms. Van Vorst requested interpreters; or

    (ii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iii)    opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective.

☐ YES          ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you find that Ms. Van Vorst has no damages, please write in the nominal amount of $1.00.*

Foreperson, please sign and date this verdict sheet and then advise the Court by note that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

February _____, 2019          _____
                                                                                            Foreperson

**Plaintiff:** Kenneth Mahnken

| **I. New York City Human Rights Law** |
|---|

1. Did Mr. Mahnken prove by a preponderance of the evidence that Defendant discriminated against him—at any point during his medical care—by doing any of the following:

    (i)    treated him "less well" than other non-deaf patients because of his disability; or

    (ii)    failed to ensure effective communication between him and the hospital staff; or

    (iii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iv)    opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective; or

    (v)    failed to ensure that the Video Remote Interpreting system met the required specifications if a sign language interpreter was unavailable; or

    (vi)    excluded him from participating in, or denied him the benefits of, Lutheran Medical Center's services, programs, or activities because of his disability.

☐ YES          ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Mr. Mahnken has no damages, please write in the nominal amount of $1.00.*

3. Did Mr. Mahnken prove by a preponderance of the evidence that Defendant's actions were reckless or in conscious disregard of his rights?

☐ YES          ☐ NO

*If you answered "YES," please go to the next question to award punitive damages.*

4. What is the amount of punitive damages that is appropriate for Defendant's actions and will sufficiently deter them from future discriminatory conduct?

$ _____

## II. Americans with Disabilities Act

1. Did Mr. Mahnken prove by a preponderance of the evidence that Defendant discriminated against him—at any point during his medical care—by doing any of the following:

    (i)    failed to ensure effective communication between him and the hospital staff; or

    (ii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iii)    excluded him from participating in, or denied him the benefits of, Lutheran Medical Center's services, programs, or activities because of his disability.

☐ YES          ☐ NO

## III. New York State Human Rights Law

*If you answered "YES" in Section II, please evaluate whether Mr. Mahnken should receive damages under state law.*

1. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Mr. Mahnken has no damages, please write in the nominal amount of $1.00.*

2

| IV. Rehabilitation Act |
|:---:|

1. Did Mr. Mahnken prove by a preponderance of the evidence that Defendant intentionally discriminated against him because of his disability?

Intentional discrimination (or deliberate indifference) arises when a person at the hospital had actual knowledge of discrimination, had authority to correct the discrimination, and failed to respond adequately.

In other words, intentional discrimination (or deliberate indifference) arises if the relevant hospital personnel:

    (i)    offered an apathetic response when Mr. Mahnken requested interpreters; or

    (ii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iii)    opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective.

☐ YES          ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If find that Mr. Mahnken has no damages, please write in the nominal amount of $1.00.*

Foreperson, please sign and date this verdict sheet and then advise the Court by note that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

February _____, 2019          _____
                                                                          Foreperson

**Plaintiff:** Yvette Soto

| **I. New York City Human Rights Law** |
|---|

1. Did Ms. Soto prove by a preponderance of the evidence that Defendant discriminated against her—at any point during her medical care—by doing any of the following:

    (i)    treated her "less well" than other non-deaf patients because of her disability; or

    (ii)    failed to ensure effective communication between her and the hospital staff; or

    (iii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iv)    opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective; or

    (v)    failed to ensure that the Video Remote Interpreting system met the required specifications if a sign language interpreter was unavailable; or

    (vi)    excluded her from participating in, or denied her the benefits of, Lutheran Medical Center's services, programs, or activities because of her disability.

☐ YES          ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Ms. Soto has no damages, please write in the nominal amount of $1.00.*

3. Did Ms. Soto prove by a preponderance of the evidence that Defendant's actions were reckless or in conscious disregard of her rights?

☐ YES          ☐ NO

*If you answered "YES," please go to the next question to award punitive damages.*

4. What is the amount of punitive damages that is appropriate for Defendant's actions and will sufficiently deter them from future discriminatory conduct?

$ _____

1

2

## II. Americans with Disabilities Act

1. Did Ms. Soto prove by a preponderance of the evidence that Defendant discriminated against her—at any point during her medical care—by doing any of the following:

    (i)    failed to ensure effective communication between her and the hospital staff; or

    (ii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iii)    excluded her from participating in, or denied her the benefits of, Lutheran Medical Center's services, programs, or activities because of her disability.

☐ YES        ☐ NO

## III. New York State Human Rights Law

*If you answered "YES" in Section II, please evaluate whether Ms. Soto should receive damages under state law.*

1. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Ms. Soto has no damages, please write in the nominal amount of $1.00.*

## IV. Rehabilitation Act

1. Did Ms. Soto prove by a preponderance of the evidence that Defendant intentionally discriminated against her because of her disability?

Intentional discrimination (or deliberate indifference) arises when a person at the hospital had actual knowledge of discrimination, had authority to correct the discrimination, and failed to respond adequately.

In other words, intentional discrimination (or deliberate indifference) arises if the relevant hospital personnel:

(i) offered an apathetic response when Ms. Soto requested interpreters; or

(ii) failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

(iii) opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective.

☐ YES          ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you find that Ms. Soto has no damages, please write in the nominal amount of $1.00.*

Foreperson, please sign and date this verdict sheet and then advise the Court by note that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

February _____, 2019                    _____
                                                         Foreperson

3

**Plaintiff:** Martin J. Weiner

| **I. New York City Human Rights Law** |
|---|

1. Did Mr. Weiner prove by a preponderance of the evidence that Defendant discriminated against him—at any point during his medical care—by doing any of the following:

    (i)    treated him "less well" than other non-deaf patients because of his disability; or

    (ii)    failed to ensure effective communication between him and the hospital staff; or

    (iii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iv)    opted to rely on methods of communication other than a sign language interpreter—lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective; or

    (v)    failed to ensure that the Video Remote Interpreting system met the required specifications if a sign language interpreter was unavailable; or

    (vi)    excluded him from participating in, or denied him the benefits of, Lutheran Medical Center's services, programs, or activities because of his disability.

☐ YES          ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Mr. Weiner has no damages, please write in the nominal amount of $1.00.*

3. Did Mr. Weiner prove by a preponderance of the evidence that Defendant's actions were reckless or in conscious disregard of his rights?

☐ YES          ☐ NO

*If you answered "YES," please go to the next question to award punitive damages.*

4. What is the amount of punitive damages that is appropriate for Defendant's actions and will sufficiently deter them from future discriminatory conduct?

$ _____

## II. Americans with Disabilities Act

1. Did Mr. Weiner prove by a preponderance of the evidence that Defendant discriminated against him—at any point during his medical care—by doing any of the following:

   (i) failed to ensure effective communication between him and the hospital staff; or

   (ii) failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

   (iii) excluded him from participating in, or denied him the benefits of, Lutheran Medical Center's services, programs, or activities because of his disability.

☐ YES            ☐ NO

## III. New York State Human Rights Law

*If you answered "YES" in Section II, please evaluate whether Mr. Weiner should receive damages under state law.*

1. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you think that Mr. Weiner has no damages, please write in the nominal amount of $1.00.*

2

### IV. Rehabilitation Act

1. Did Mr. Weiner prove by a preponderance of the evidence that Defendant intentionally discriminated against him because of his disability?

Intentional discrimination (or deliberate indifference) arises when a person at the hospital had actual knowledge of discrimination, had authority to correct the discrimination, and failed to respond adequately.

In other words, intentional discrimination (or deliberate indifference) arises if the relevant hospital personnel:

    (i)    offered an apathetic response when Mr. Weiner requested interpreters; or

    (ii)    failed to follow the hospital's own policy regarding communication accommodations for deaf patients; or

    (iii)    opted to rely on methods of communication other than a sign language interpreter— lip reading, note writing, Video Remote Interpreting, and so on—despite knowing that these other methods were ineffective.

☐ YES          ☐ NO

2. What is the amount of damages, if any, incurred as a result of Defendant's actions?

$ _____

*If you find that Mr. Weiner has no damages, please write in the nominal amount of $1.00.*

Foreperson, please sign and date this verdict sheet and then advise the Court by note that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

February _____, 2019          _____
                                                                               Foreperson