## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

ANDREA L. VAN VORST, KENNETH
MAHNKEN, YVETTE SOTO, and
MARTIN J. WEINER,

No. 15-cv-1667 (ERK) (PK)

*Plaintiffs*,

v.

LUTHERAN HEALTHCARE d/b/a
LUTHERAN MEDICAL CENTER,

*Defendant*.

---

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW
### OR IN THE ALTERNATIVE A NEW TRIAL

---

Dated: September 20, 2019

Andrew Rozynski
David John Hommel
Adriana Alcalde (admitted *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
dhommel@eandblaw.com
aalcalde@eandblaw.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

I.      Factual Background ......................................................................................... 2

        A.      Plaintiffs' Primary Language Is American Sign Language, Not English ............... 2

        B.      Defendant Explained Consent Forms to Plaintiffs in English .................................. 3

II.     Procedural History ........................................................................................... 6

        A.      Over Plaintiffs' Objections, the Court Failed to Instruct the Jury That Defendant
                Must Give "Primary Consideration" to Plaintiffs' Language Preferences .............. 6

        B.      The Jury Found That Plaintiffs Received Effective Communication ....................... 7

ARGUMENT .............................................................................................................. 8

I.      Plaintiffs Are Entitled to Judgment as a Matter of Law ................................................ 8

        A.      Legal Standard ....................................................................................... 8

        B.      In Terms of Effective Communication, Plaintiffs Were Treated "Less Well" Than
                Other Patients When They Received Consent Forms in a Secondary Language ..... 9

II.     In the Alternative, Plaintiffs Are Entitled to a New Trial ............................................. 11

        A.      Legal Standard ..................................................................................... 11

        B.      The Jury Instructions Contained Non-Harmless Errors ........................................ 12

                i.      The New York City Human Rights Law Is Broader than State and Federal
                        Counterparts ...................................................................................... 13

                ii.     Although a Federal Counterpart Requires Defendant-Entities to Afford
                        "Primary Consideration" to a Plaintiff's Language Preference, the Court
                        Failed to Incorporate This Requirement into Its Jury Instructions ............ 15

        C.      The Jury Reached a Verdict That Is Against the Weight of the Evidence ............ 18

CONCLUSION ......................................................................................................... 22

i

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Branen*,
    17 F.3d 552 (2d Cir. 1994) ...................................................................................12

*B.C. v. Mount Vernon Sch. Dist.*,
    837 F.3d 152 (2d Cir. 2016) ...........................................................................13, 14

*Borngesser v. Jersey Shore Med. Ctr.*,
    774 A.2d 615 (N.J. Super. Ct. App. Div. 2001) ...............................2, 10, 19, 20

*Brady v. Wal-Mart Stores, Inc.*,
    455 F. Supp. 2d 157 (E.D.N.Y. 2006) ..................................................................12

*Bragdon v. Abbott*,
    524 U.S. 624 (1998) .............................................................................................20

*Bumpus v. N.Y.C. Transit Auth.*,
    859 N.Y.S.2d 893 (N.Y. Sup. Ct. Feb. 13, 2008) .................................................14

*Carrion v. Agfa Constr., Inc.*,
    720 F.3d 382 (2d Cir. 2013) .................................................................................12

*Chin v. Port Auth. of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012) .................................................................................12

*Crawford v. Franklin Credit Mgmt. Corp.*,
    No. 08-CV-6293 (KMW), 2015 U.S. Dist. LEXIS 38737 (S.D.N.Y. Mar. 26, 2015) ..18, 19, 20

*Farrugia v. N. Shore Univ. Hosp.*,
    820 N.Y.S.2d 718 (N.Y. Sup. Ct. June 21, 2006) ...........................................14, 15

*Gonzalez v. City of N.Y.*,
    No. 1:17-cv-6518-GHW, 2019 U.S. Dist. LEXIS 53135 (S.D.N.Y. Mar. 28, 2019) ................9

*Graham v. City of N.Y.*,
    128 F. Supp. 3d 681 (E.D.N.Y. 2015) .........................................................8, 11, 12

*Loeffler v. Staten Island Univ. Hosp.*,
    582 F.3d 268 (2d Cir. 2009) ..........................................................................1, 13, 17

*Majocha v. Turner*,
    166 F. Supp. 2d 316 (W.D. Pa. 2001) ..................................................................21

## TABLE OF AUTHORITIES
### (continued)

*Mihalik v. Credit Agricole Cheuvreux*,
   715 F.3d 102 (2d Cir. 2013)...................................................................................14, 15, 16

*Min Jin v. Metro. Life Ins. Co.*,
   310 F.3d 84 (2d Cir. 2002)..............................................................................................12, 17

*Negron v. Snoqualmie Valley Hosp.*,
   936 P.2d 55 (Wash. Ct. App. 1997)....................................................................................10

*NG Global v. United Parcel Serv. Oasis Supply Corp.*,
   757 F.3d 92 (2d Cir. 2014).....................................................................................................8

*Noll v. IBM*,
   787 F.3d 89 (2d Cir. 2015)..................................................................................................2, 3

*Novio v. N.Y. Acad. of Art*,
   286 F. Supp. 3d 566 (S.D.N.Y. 2017) ..................................................................................9

*Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*,
   796 F. Supp. 2d 396 (E.D.N.Y. 2011) ...........................................................................18, 19

*Palmer v. Cook*,
   2019 NY Slip Op 29240 (N.Y. Sup. Ct. Aug. 5, 2019) .........................................................9

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001).............................................................................................................13

*Robles v. Domino's Pizza, LLC*,
   913 F.3d 898 (9th Cir. 2019) ..............................................................................................15

*Rotger v. Montefiore Med. Ctr.*,
   No. 1:15-cv-7783-GHW, 2019 U.S. Dist. LEXIS 54463 (S.D.N.Y. Mar. 29, 2019).........14, 16

*Spector v. Norwegian Cruise Line Ltd.*,
   545 U.S. 119 (2005).............................................................................................................13

*Sullivan v. Study.com LLC*,
   No. 18-CV-1939 (JPO), 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019)................14

*Sutter v. Dibello*,
   No. CV 18-817 (ADS) (AKT), 2019 U.S. Dist. LEXIS 136665 (E.D.N.Y. Aug. 12, 2019) .....9

# TABLE OF AUTHORITIES
## (continued)

*Szewczyk v. Saakian*,
  No. 18-1333-cv, 2019 U.S. App. LEXIS 22511 (2d Cir. July 30, 2019) ...................................9

*United States v. Landau*,
  155 F.3d 93 (2d Cir. 1998)........................................................................................................19

*United States EEOC v. UPS Supply Chain Solutions*,
  620 F.3d 1103 (9th Cir. 2010) ...................................................................................................3

*Viera v. City of N.Y.*,
  No. 15 Civ. 5430 (PGG), 2017 U.S. Dist. LEXIS 113978 (S.D.N.Y. July 20, 2017)........16, 17

*Wiercinski v. Mangia 57, Inc.*,
  787 F.3d 106 (2d Cir. 2015)........................................................................................................8

*Williams v. City of N.Y.*,
  121 F. Supp. 3d 354 (S.D.N.Y. 2015) ......................................................................................14

*Williams v. N.Y.C. Hous. Auth.*,
  872 N.Y.S.2d 27 (N.Y. App. Div. Jan. 27, 2009)....................................................................14

*Zhang v. Zhang*,
  No. 16 Civ. 4013 (LGS), 2019 U.S. Dist. LEXIS 24372 (S.D.N.Y. Feb. 14, 2019) .................8

## STATUTES, RULES, AND OTHER AUTHORITIES

42 U.S.C. § 12182(a) .....................................................................................................................13

28 C.F.R. § 35.160(b) ....................................................................................................................16

28 C.F.R. § 36.303(f)..................................................................................................................2, 18

45 C.F.R. § 92.202 .........................................................................................................................16

Fed. R. Civ. P. 50(a)(1) ...................................................................................................................8

Fed. R. Civ. P. 50(b) ...................................................................................................................1, 8

Fed. R. Civ. P. 51(c)(2) .................................................................................................................12

Fed. R. Civ. P. 59(a)(1)(A) ........................................................................................................1, 11

# TABLE OF AUTHORITIES
## (continued)

Final Rule, Nondiscrimination on the Basis of Disability by Public Accommodations and in
    Commercial Facilities, 56 Fed. Reg. 35544 (July 26, 1991) ............................................20, 21

ADA Business BRIEF: Communicating with People Who Are Deaf or Hard of Hearing in
    Hospital Settings, available at https://www.ada.gov/hospcombr.htm
    (last visited Sept. 20, 2019)......................................................................................................21

ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at*
    https://bit.ly/2LjgXD4 (last visited Sept. 20, 2019)............................................1, 2, 13, 15, 17

New York State Hospital Patients' Bill of Rights, *available at* https://on.ny.gov/2mqJ9vn
    (last visited Sept. 20, 2019)......................................................................................................18

NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the
    Basis of Disability, *available at* https://on.nyc.gov/2zu4LKj
    (last visited Sept. 20, 2019)....................................................................................9, 10, 11, 19

## INTRODUCTION

On August 23, 2019, the jury returned a verdict in favor of Defendant Lutheran Healthcare, finding that all four Plaintiffs—Andrea Van Vorst, Kenneth Mahnken, Yvette Soto, and Martin Weiner—received effective communication at every point of their medical care during a four-year period. Plaintiffs now move for judgment as a matter of law under Fed. R. Civ. P. 50(b) or in the alternative a new trial under Fed. R. Civ. P. 59(a)(1)(A).

The jury's verdict is contrary to commonsense, established law, and the overwhelming evidence in the record. Under Rule 50, Plaintiffs are entitled to judgment as a matter of law because the evidence cannot support a verdict that Plaintiffs could effectively communicate at every point of their medical care. Under the New York City Human Rights Law, Plaintiffs were treated "less well" when they received over 70 consent forms in a secondary language—without the benefit of an American Sign Language interpreter.

In the alternative, Plaintiffs are entitled to a new trial under Rule 59 because the jury instructions contained non-harmless errors and the jury's verdict was against the weight of the evidence. First, the Court erred when it instructed the jury—over Plaintiffs' objection—that as a bright-line rule, Plaintiffs are not entitled to their "preferred means of communication." (Jury Instructions at 11:17–19, ECF No. 88.) As the Second Circuit has made clear, the New York City Human Rights Law imposes a more liberal interpretation than its "federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275, 278 (2d Cir. 2009). One of the federal counterparts—Title II of the Americans with Disabilities Act—mandates "primary consideration" to a disabled individual's choice of aid or service. ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at* https://bit.ly/2LjgXD4 (last visited Sept. 20, 2019), at 4 ("When choosing an aid or service, title II entities are ***required*** to give primary consideration to the choice

1

of aid or service requested by the person who has a communication disability." (emphasis in original)). More to the point, a defendant-entity "must honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden . . . ." *Id.* Thus, without evidence of undue burden, Defendant needed to honor Plaintiffs' requests for ASL interpreters—be it through in-person interpreters or Video Remote Interpreting technology that was properly functioning. *See* 28 C.F.R. § 36.303(f).

Second, the jury's verdict was against the weight of the evidence under Rule 59 because to reiterate, Plaintiffs received consent forms in a secondary language without the benefit of an interpreter and contrary to Defendant's own policy. *See Borngesser v. Jersey Shore Med. Ctr.*, 774 A.2d 615, 617, 619, 625–26 (N.J. Super. Ct. App. Div. 2001) (granting a motion for a new trial when a deaf hospital patient contended that "the verdict was against the weight of the evidence," in part, because "a sign language interpreter may have been required during those instances when communication concerning [the patient's] medical care and treatment occurred, such as *when her consents for the catheterization and defibrillator were obtained*, and during the discussions with the doctors concerning those procedures" (emphasis added)). For all these reasons, the Court should grant judgment as a matter of law in Plaintiffs' favor under Rule 50 or a new trial under Rule 59.

## BACKGROUND

### I.   Factual Background

#### A.   Plaintiffs' Primary Language Is American Sign Language, not English

American Sign Language ("ASL") is "the primary language of many North Americans who are deaf and is one of several communication options used by people who are deaf or hard-

of-hearing." *Noll v. IBM*, 787 F.3d 89, 99 n.1 (2d Cir. 2015) (citation omitted). It is a foreign language that "employs signs made by moving the hands combined with facial expressions and postures of the body." *Id.* ASL "contains all the fundamental features of language—it has its own rules for pronunciation, word order, and complex grammar." *Id.* In other words, ASL is different than English, and "[i]n many cases, there is no one-to-one correspondence between signs in ASL and words in the English language." *United States EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1105 (9th Cir. 2010).[1]

Plaintiffs are profoundly deaf, and their primary language is ASL, not English. (Court's Mem. & Order on Summ. J. at 2, ECF No. 55.) This is not a controversial position, and so the core issue at trial was the means in which Defendant provided effective communication to Plaintiffs when they were patients at Defendant's hospital. Plaintiffs alleged, and Defendant disputed, that they were unable to effectively communicate with Defendant's staff regarding their medical care because Defendant failed to provide qualified in-person ASL interpreters for critical medical communications and instead relied on lip reading, note writing in English, and malfunctioning Video Remote Interpreting technology or what is known as "VRI." (*Id.* at 1, 5.)

### B.  Defendant's Staff Explained Consent Forms to Plaintiffs in English

During their stay at Defendant's hospital, Plaintiffs received over 70 consent forms in English—without the benefit of an ASL interpreter—for events ranging from tooth extractions to severe foot infections and major surgeries to discharges against medical advice. Examples are not hard to find. (*See* Van Vorst Consent Forms, Ex. A; Mahnken Consent Forms, Ex. B; Soto Consent

---

[1] "For example, while an English speaking person might ask 'have you been to San Francisco?,' an ASL user might sign 'touch San Francisco already you?' While an English speaking person might ask, 'What are your hobbies?,' an ASL user might sign, 'Time offdo do do?'" *Borngesser*, 774 A.2d at 617 (cleaned up).

Forms, Ex. C; Weiner Consent Forms, Ex. D.) The consent forms contain some variation of "Interpreter Requirements" or "Translation Requirements," as seen here:

**INTERPRETER REQUIREMENTS:** If consenting party is unable to read or is unable to understand English.
I hereby certify that I have read or verbally interpreted the foregoing consent for the consenting party in the presence of the physician named below, and that the consenting party has indicated to me his/her understanding of what it contains.

| Language | | Interpreter | | |
|---|---|---|---|---|
| Physician Name (Print) | Physician Signature | | Date | Time |

\* \* \*

**TRANSLATION REQUIREMENTS:**
If consenting party is unable to read or is unable to understand English.
I hereby certify that I have read or verbally translated or have had translated the foregoing consent for the consenting party in the presence of the physician who will perform the operation/procedure who is signing below, and that the consenting party has indicated to me his/her understanding of what it contains.

| LANGUAGE | | TRANSLATOR | |
|---|---|---|---|
| DATE | TIME | PHYSICIAN SIGNATURE | |

(*See, e.g.*, Van Vorst Consent Forms.) In these two examples, the operative phrase is the first one: "If consenting party is unable to read or is unable to understand English . . . ." And the key omission is a signature by an interpreter (or a "translator," depending on the terminology used in a particular consent form). In a sidebar during expert-witness testimony, the Court specifically addressed Plaintiffs' language needs and the consent-form issue:

> THE COURT: It seems to me that it's not in dispute in this case, as I understand it, that they require an American Sign Language [*sic*]. The only question is whether they have been provided to it in a way that is useful to them.
>
> \* \* \*
>
> THE COURT: Everybody needs, not interpreters, but they need it explained in ways that they can understand it, significant interactions, whether it be health care, vital signs and showing the results. Providing bed pans and guiding them to the bathroom, other communications require interpreters.

4

* * *

>THE COURT: I agree that you need an ASL interpreter to speak [sic] whether they could sign a valid consent form, and they didn't have it, the consent form is not valid.

>MR. ROZYNSKI: And they're entitled to have effective communication for those consent forms --

>THE COURT: They are.

>MR. ROZYNSKI: -- under the law.

>THE COURT: Well, I'm not disputing that . . . .

(Aug. 13th Tr. 191:22–25, 192:18–23, 195:11–19, Ex. L.)

Three other points require emphasis. First, Defendant's former director of language services and top-level administrator, Marina Chilingarova, explained that VRI should not be used to sign consent forms, compelling the conclusion that qualified in-person ASL interpreters would be the only option for individuals like Plaintiffs. (*See, e.g.*, Aug. 20th Tr. 19:17–18, Ex. M.) At any rate, to take a belt-and-suspenders approach, VRI technology was not provided on the consent forms cited above. (*Compare* Van Vorst Consent Forms *with* Van Vorst VRI Logs, Ex. E; *compare* Mahnken Consent Forms *with* Mahnken VRI Logs, Ex. F; *compare* Soto Consent Forms *with* Soto VRI Logs, Ex. G; *compare* Weiner Consent Forms *with* Weiner VRI Logs, Ex. H.) And to be clear, Plaintiffs have not cited every single consent form. There are many in which Defendant allegedly provided VRI technology to translate the consent form in ASL, and Plaintiffs signed these forms between 2012 and 2014 or later—a time period where Plaintiffs also received over 70 consent forms in English without the benefit of an ASL interpreter. (*See* VRI-Translated Consent Forms, Ex. N.) The implicit conclusion, then, is that Defendant understood that Plaintiffs needed ASL interpreters for consent forms.

5

Second, some patients speaking other languages—during the relevant time period: Spanish, Chinese, Russian, and Arabic—received translations of "major written documents and materials." (*See* Policy No. C-16 at 4, Ex. J; *see also* Policy No. C-45, Ex. K.) Third, despite there being over 70 consent forms with no ASL interpreter provided, the record contains only one formal instance in which a Plaintiff purportedly refused an ASL interpreter and completed the appropriate form, which—according to hospital protocol—should be completed with or without the Plaintiff's signature. (*See* Consent-Refusal Form, Ex. I.)

## II. Procedural History

### A. Over Plaintiffs' Objections, the Court Failed to Instruct the Jury That Defendant Must Give "Primary Consideration" to Plaintiffs' Language Preferences

The Court held a charge conference at the conclusion of Defendant's case-in-chief. In pertinent part, Plaintiffs objected to a jury instruction about their preferred means of communication:

> MR. ROZYNSKI: So page 11, line 11 [of the Jury Instruction] says: The hospital was not required to provide the plaintiffs with the best possible means of communication, nor the most efficient means of communication, nor the plaintiff's preferred means of communication.
>
> * * *
>
> MR. ROZYNSKI: The only thing that I have a problem with is the "not the plaintiffs preferred means of communication."
>
> So under the Title II of the ADA, as well as the Affordable Care Act, which is the federal standard regarding effective communication in hospital settings, hospitals are to give primary consideration to the preferences of deaf patients in terms of what they need. And primary consideration doesn't mean you have to automatically give everything you ask for, but they do have to give deference to their stated preferences and requests, and because the New York City Human Rights Law is more liberally construed than the federal counterpart, I would say that, Nor the plaintiff's preferred means of

communication would be not accurate under the standard.

(Aug. 20th Tr. 119:15–19, 120:8–20.) Plaintiffs acknowledged the Court's two concerns: (1) yes, the ADA claim here arose out of Title III, not Title II, and (2) yes, the implementing regulations of the Affordable Care Act that "give primary consideration were implemented after this case was filed." (*Id.* 120:22–121:11.) But Plaintiffs then clarified that the NYCHRL would still "provide for primary consideration" because that statute is "more protective than [its] federal counterparts," including Title II, "which was passed [before this case was filed]." (*Id.* 121:7–8, 122:5–8, 123:3–8.) The Court, however, decided not to include primary-consideration language and remove the phrase about "preferred means of communication." (*See id.* 123:18.)

## B.     The Jury Found That Plaintiffs Received Effective Communication

Although Plaintiffs moved for a directed verdict, the Court denied those motions to allow the jury to reach a verdict. On August 23, 2019, the jury reached a verdict in favor of Defendant. (ECF Nos. 90–93.) By way of brief background, Plaintiffs filed claims under four federal and state antidiscrimination statutes: Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law. During the Charge Conference, the Parties whittled down the claims that would be submitted to the jury. (Aug. 20th Tr. 28:14–15 & 70:2–4.) Ultimately, the jury was charged on only the New York City Human Rights Law because it is the most liberal standard and provides all the relief that Plaintiffs were seeking.

**ARGUMENT**

Plaintiffs present two core arguments. Under Rule 50, Plaintiffs are entitled to judgment as a matter of law because they were treated "less well" than other patients when they received consent forms in a secondary language—without the benefit of an ASL interpreter. Alternatively, under Rule 59, Plaintiffs are entitled to a new trial because the jury instructions contained non-harmless errors and the jury's verdict was against the weight of the evidence.

## I.      Plaintiffs Are Entitled to Judgment as a Matter of Law

### A.      Legal Standard

Under Fed. R. Civ. P. 50, a district court may "set aside a jury's verdict if the court finds that 'a reasonable jury would not have a legally sufficient evidentiary basis to find' as it did." *Graham v. City of N.Y.*, 128 F. Supp. 3d 681, 692 (E.D.N.Y. 2015) (quoting Fed. R. Civ. P. 50(a)(1), (b)). In undertaking this analysis, "'courts are required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in its favor from the evidence.'" *Zhang v. Zhang*, No. 16 Civ. 4013 (LGS), 2019 U.S. Dist. LEXIS 24372, at *4 (S.D.N.Y. Feb. 14, 2019) (quoting *NG Global v. United Parcel Serv. Oasis Supply Corp.,* 757 F.3d 92, 97 (2d Cir. 2014) (brackets omitted)). And a "'court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury.'" *Id.* (quoting *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015)). Yet judgment as a matter of law should be granted "'if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it.'" *Graham*, 128 F. Supp. 3d at 692 (quoting *Wiercinski*, 787 F.3d at 112).

### B.   In Terms of Effective Communication, Plaintiffs Were Treated "Less Well" Than Other Patients When They Received Consent Forms in a Secondary Language

"Treating an individual less well than others because of their disability, or perceived disability, in . . . public accommodations is a violation of the NYCHRL." NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Disability, *available at* https://on.nyc.gov/2zu4LKj (last visited Sept. 20, 2019), at 15. Courts within the Second Circuit have applied this less-well standard in other situations. *See, e.g.*, *Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*, No. 15-CV-2572 (PKC) (LB), ECF No. 90 (E.D.N.Y. Mar. 19, 2018) ("In order to succeed on her NYCHRL claim, Plaintiff must prove by a preponderance of the evidence: First, that she is disabled; and Second, that Defendant treated Plaintiff less well than other individuals seeking mental health services at least in part because of her disability."); *Szewczyk v. Saakian*, No. 18-1333-cv, 2019 U.S. App. LEXIS 22511, at *2 (2d Cir. July 30, 2019); *Sutter v. Dibello*, No. CV 18-817 (ADS) (AKT), 2019 U.S. Dist. LEXIS 136665, at *62 (E.D.N.Y. Aug. 12, 2019); *Gonzalez v. City of N.Y.*, No. 1:17-cv-6518-GHW, 2019 U.S. Dist. LEXIS 53135, at *56 (S.D.N.Y. Mar. 28, 2019) (In the employment context, "to plead a claim of disability discrimination under the NYCHRL, a plaintiff must allege that he was treated 'less well' because of his disability."); *Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 583–84 (S.D.N.Y. 2017) (intimating that the less-well standard under sexual-harassment cases applies to cases against public accommodations).[2]

---

[2] Consider, for example, cases involving a hostile work environment. Under other standards, a plaintiff must show that workplace conduct was "sufficiently severe or pervasive to alter the conditions" of employment. *See, e.g.*, *Palmer v. Cook*, 2019 NY Slip Op 29240, at *27–28 (N.Y. Sup. Ct. Aug. 5, 2019) (citation and quotation marks omitted). Under the NYCHRL, however, a plaintiff need only show that he was "treated less well than other employees of his membership in a protected class." *Id.*

Everyone—the Parties and the Court—agrees that Plaintiffs' primary language is American Sign Language, not English. On that basis, the result here is straightforward: Plaintiffs were treated "less well" than other patients when they received over 70 consent forms in a secondary language—without the benefit of an ASL interpreter. Even if the jury disagreed with expert testimony outlining Plaintiffs' abilities in English, nothing in the record supports the proposition that Plaintiffs' fluency in English ever surpassed their fluency in ASL. So even under the most charitable circumstances, English was only a secondary language. The NYCHRL does not turn healthcare into a guessing game for those who are not fluent in English. In that vein, Plaintiffs could not fully communicate by asking appropriate questions and providing appropriate answers based on the circumstances surrounding each consent form. *See Borngesser*, 774 A.2d at 624 ("In addition to a patient's ability to receive information from her doctors, effective communication also includes a patient's right to convey her own thoughts and opinions to medical staff. Deaf patients must be afforded a means to describe their symptoms, to relay important information about allergies, for example, and to inform medical staff about the basic circumstances surrounding their illness or injury." (citation omitted)); *Negron v. Snoqualmie Valley Hosp.*, 936 P.2d 55, 59 (Wash. Ct. App. 1997) ("Treatment received in a hospital generally includes not only medical intervention, but also the opportunity to explain symptoms, ask questions, and understand the treatment being performed including options, if any."). Indeed, a hospital "must provide a qualified sign language interpreter to a patient who is deaf as a reasonable accommodation because, in order for a patient in a hospital setting to 'enjoy the right or rights in question,' they require in-depth, time-sensitive, and nuanced communications with medical personnel. A patient will therefore not be able to enjoy the right or rights in question without an interpreter." NYC

Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Disability, *available at* https://on.nyc.gov/2zu4LKj (last visited Sept. 20, 2019), at 64–65.

Deaf patients fluent in ASL like Plaintiffs were treated "less well" than other patients seeking Defendant's services who speak any other language as their primary language. That is to say, Defendant violated the law every time a deaf patient is required to read and sign a written consent form without the benefit of an ASL interpreter. (*See, e.g.*, Policy No. C-16 at 4; *see also* Policy No. C-45.) Of course, it is impossible to create a written consent form in ASL, but Plaintiffs are still entitled to have the content of consent forms interpreted in that language. In fact, the Court even acknowledged that Plaintiffs "need an ASL interpreter" to "sign a valid consent form." (Aug. 13th Tr. 195:11–18.)

The evidence in favor of Plaintiffs is "so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *See Graham*, 128 F. Supp. 3d at 692 (citation and quotation marks omitted). A contrary ruling would gut the NYCHRL's protections and have startling consequences on the deaf community. English is the predominant language in the United States, and Plaintiffs should not be punished for wanting to participate in a hearing world. Otherwise, with every word learned, Plaintiffs unknowingly chipped away at their rights. That is not the law, and so Plaintiffs are entitled to judgment in their favor.

## II.    In the Alternative, Plaintiffs Are Entitled to a New Trial

Even if the Court were to disagree with Plaintiffs on their Rule 50 arguments, Plaintiffs are still entitled to a new trial.

### A.    Legal Standard

Under Fed. R. Civ. P. 59(a)(1)(A), a district court may award a new trial if, among other reasons, (i) the jury instructions contained "non-harmless errors" or (ii) the jury reached "a verdict

that is against the weight of the evidence." *Graham*, 128 F. Supp. 3d 681, 693; *see also Carrion v. Agfa Constr., Inc.*, 720 F.3d 382, 387 (2d Cir. 2013) ("A district court may properly grant a motion for a new trial following a jury verdict when 'the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice.'" (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d Cir. 2012))).

### B.     The Jury Instructions Contained Non-Harmless Errors

"An erroneous instruction, unless harmless, requires a new trial." *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 91 (2d Cir. 2002). "'A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.'" *Id.* (quoting *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)); *see also Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 185–86 (E.D.N.Y. 2006) (focusing on whether "a jury can intelligently determine the questions presented to it" (quotation marks omitted)).

The Court erred when it instructed the jury that Defendant "was not required to provide the plaintiffs with the best possible means of communication, nor the most efficient means of communication, nor the plaintiffs' preferred means of communication." (Jury Instructions at 11:17–19.) Consistent with Fed. R. Civ. P. 51(c)(2), Plaintiffs' counsel objected to the preferred-means language:

> MR. ROZYNSKI: The only thing that I have a problem with is the "not the plaintiffs preferred means of communication."
>
> So under the Title II of the ADA, as well as the Affordable Care Act, which is the federal standard regarding effective communication in hospital settings, hospitals are to give primary consideration to the preferences of deaf patients in terms of what they need. And primary consideration doesn't mean you have to automatically give everything you ask for, but they do have to give deference to their stated preferences and requests, and because the New York City Human Rights Law is more liberally construed than the federal counterpart, I would say that, Nor the plaintiff's preferred means of

communication would be not accurate under the standard.

(Aug. 20th Tr. 120:8–20.) Instead, as explained below, the jury should have been instructed that Defendant needed to "honor [Plaintiffs'] choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden." *See* ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at* https://bit.ly/2LjgXD4 (last visited Sept. 20, 2019), at 6.

### i.   The New York City Human Rights Law Is Broader than State and Federal Counterparts

To begin, the Americans with Disabilities Act "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005) (citing 42 U.S.C. § 12182(a)). Title II of the ADA applies to state and local governments, and Title III applies to public accommodations like Defendant. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). In terms of effective-communication analysis, the difference between both Titles is stark. A Title II entity "is *required* to give primary consideration to the choice of aid or service requested by the person who has a communication disability." *Id.* at 6 (emphasis in original). Put another way, the Title II entity "must honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden." *Id.* On the other hand, a Title III entity is only "encouraged to consult with the person with a disability to discuss what aid or service is appropriate." *Id.*

Most other state and federal statutes provide identical protections to the ADA, but the NYCHRL imposes a more liberal interpretation than its "federal and state counterparts." *Loeffler*, 582 F.3d at 275, 278; *see also B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016)

(applying the same substantive standard for claims under the ADA and the Rehabilitation Act); *Williams v. City of N.Y.*, 121 F. Supp. 3d 354, 364 n. 10 (S.D.N.Y. 2015) ("Protections afforded by the NYSHRL are construed coextensively with the ADA, and interpretations of the federal and state statutes provide the 'floor' for claims under the NYCHRL."). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible. . . . Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102, 109 (2d Cir. 2013). Indeed, the NYCHRL has "a one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a floor below which the NYCHRL cannot fall." *Compare Rotger v. Montefiore Med. Ctr.*, No. 1:15-cv-7783-GHW, 2019 U.S. Dist. LEXIS 54463, at *29 (S.D.N.Y. Mar. 29, 2019) (brackets and quotation marks omitted) *with Sullivan v. Study.com LLC*, No. 18-CV-1939 (JPO), 2019 U.S. Dist. LEXIS 47073, at *5–6, *16–17 (S.D.N.Y. Mar. 21, 2019) (evaluating a failure-to-accommodate claim against a public accommodation and observing that "the NYCHRL, although adopting a different and more liberal standard, has a one-way ratchet whereby the ADA standard constitutes its floor").

"In short, the text and legislative history represent a desire that the [NYCHRL] meld the broadest vision of social justice with the strongest law enforcement deterrent." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 32 (N.Y. App. Div. Jan. 27, 2009); *Bumpus v. N.Y.C. Transit Auth.*, 859 N.Y.S.2d 893, 893 (N.Y. Sup. Ct. Feb. 13, 2008) ("The legislative history contemplates that the Law be independently construed with the aim of making it the most progressive in the nation."); *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. June 21, 2006)

("Professor Craig Gurian, the principal drafter of the Local Civil Rights Restoration Act in 1991, argues that the courts' unwillingness to apply a more liberal standard in construing the City's Human Rights Law led to the passage of the Restoration Act in 2005."). And this mandate— "construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs," *Mihalik*, 715 F.3d at 109 (citation and quotation marks omitted)—poses no ambiguity and thus raises no due-process concerns. *Cf. Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 906–07 (9th Cir. 2019) (holding that a defendant-entity "received fair notice that its website and app must comply with the ADA" because the ADA's prohibitions were not "impermissibly vague" and thus did not violate due process).

      ii.    **Although a Federal Counterpart Requires Defendant-Entities to Afford "Primary Consideration" to a Plaintiff's Language Preference, the Court Failed to Incorporate This Requirement into Its Jury Instructions**

As explained below, it does not require considerable calisthenics to import the primary-consideration requirement from Title II to the NYCHRL. The Second Circuit has made clear that the New York City Human Rights Law imposes a more liberal interpretation than its "federal and state counterparts." *Loeffler*, 582 F.3d at 275, 278. One of the federal counterparts—Title II of the ADA—mandates "primary consideration" to a disabled individual's choice of aid or service. ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at* https://bit.ly/2LjgXD4 (last visited Sept. 20, 2019), at 4 ("When choosing an aid or service, title II entities are ***required*** to give primary consideration to the choice of aid or service requested by the person who has a communication disability." (emphasis in original)). More to the point, a defendant-entity "must honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden . . . ." *Id.*

Indeed, the NYCHRL's provisions must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d at 109 (citation and quotation marks omitted). Although Plaintiffs did not file a claim under the ACA, that statute serves as a model on how Title III entities can be held to Title II standards because Congress already contemplated one way to implement such a construction. Specifically, the federal regulations implementing the ACA adopt Title II language. 45 C.F.R. § 92.202 ("A covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 CFR 35.160 through 35.164 [in Title II]. Where the regulatory provisions referenced in [Title II] use the term 'public entity,' the term 'covered entity' shall apply in its place."). Given the NYCHRL's liberal mandate with the ACA as one of its "floor[s]," *see, e.g.*, *Rotger*, 2019 U.S. Dist. LEXIS 54463 at *29, it follows, then, that the primary-consideration requirement applies to the ACA:

> A "[covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

45 C.F.R. § 92.202(a); 28 C.F.R. § 35.160(b). Thus, applying that logic would not "convert the NYCHRL to a strict liability statute, requiring the imposition of liability whenever an ASL interpreter is not provided." *Viera v. City of N.Y.*, No. 15 Civ. 5430 (PGG), 2017 U.S. Dist. LEXIS

113978, at *55 (S.D.N.Y. July 20, 2017). Instead, courts would merely import Title II principles to the NYCHRL.[3]

The jury instruction here was erroneous because it was misleading and failed to adequately inform the jury on the law. *See Min Jin*, 310 F.3d at 91. The primary-consideration requirement tells a defendant-entity to "honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden . . . ." ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at* https://bit.ly/2LjgXD4 (last visited Sept. 20, 2019), at 4. Plaintiffs requested ASL interpreters, so that leaves Defendant with two options: (1) qualified in-person ASL interpreters ("the person's choice") or (2) properly functioning VRI technology ("another equally effective means of communication"). *See id.* There is no third option. Any other method—such as being forced to read consent forms in English— would not be an "*equally effective* means of communication." And to reiterate, Marina Chilingarova essentially told the Court that VRI technology cannot be used for consent forms, and so logically, the only option would be live, in-person ASL interpreters under the primary-consideration requirement. (*See, e.g.*, Aug. 20th Tr. 19:17–18.)

Plaintiffs are not commenting on the wisdom of this approach or asking that courts apply a bright-line rule to allow VRI technology as a potential option to interpret consent forms. Rather, if Defendant's protocol was not to provide VRI, the only option under the primary-consideration analysis—or any analysis—would be qualified in-person ASL interpreters. That is because under

---

[3] Although Plaintiffs filed their ADA claim under Title III, the NYCHRL requires an "independent liberal construction" from its state and federal counterparts. *Loeffler*, 582 F.3d at 278 (quotation marks omitted). In sum, if the NYCHRL provides for a more liberal standard than all of its state and federal counterparts, the primary-consideration requirements should apply to all claims under the NYCHRL—even if the accompanying ADA claim arises under Title III.

the New York State Hospital Patients' Bill of Rights, Plaintiffs were entitled to receive, among

other things, (i) "complete information about [their] diagnosis, treatment and prognosis" and (ii)

"all the information that [they] need[ed] to give informed consent for any proposed procedure or

treatment," including "the possible risks and benefits of the procedure or treatment." New York

State Hospital Patients' Bill of Rights, *available at* https://on.ny.gov/2mqJ9vn (last visited

Sept. 20, 2019). To receive "complete information" is to use an ASL interpreter—be it through in-

person interpreters or Video Remote Interpreting technology that was properly functioning. *See*

28 C.F.R. § 36.303(f).

In sum, it is clear that the preferred-means language affected the jury's deliberation. At one

point, the jury submitted a note on effective communication with the following excerpts:

> We are struggling with the definition of "effectively communicate."
>
> *     *     *
>
> Does "effective communication" need to be done in the native or preferred language?
>
> *     *     *
>
> Would it be appropriate to consider note writing as an "effective means" of communication?

(Jury Note (Court Exhibit 24), ECF No. 89-5.) The jury would not need to ask about preferred

language or the viability of note writing if the Court instructed them on primary consideration.

Accordingly, a new trial is warranted because of these non-harmless errors in the jury instructions.

### C.     The Jury Reached a Verdict That Is Against the Weight of the Evidence

There is a second problem—independent of the jury-instruction issue—because the jury's

verdict is against the weight of the evidence. As an initial matter, "a Rule 59 motion is 'less

onerous than a Rule 50 motion in two ways: first, unlike judgment as a matter of law, a new trial

may be granted even if there is substantial evidence supporting the jury's verdict. Second, in deciding a Rule 59 motion a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Crawford v. Franklin Credit Mgmt. Corp.*, No. 08-CV-6293 (KMW), 2015 U.S. Dist. LEXIS 38737, at *20 (S.D.N.Y. Mar. 26, 2015) (quoting *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 796 F. Supp. 2d 396, 405–06 (E.D.N.Y. 2011)) (brackets omitted). To be sure, witness credibility is often the jury's province, and so a "'jury's credibility assessments are entitled to deference.'" *Id.* (quoting *United States v. Landau*, 155 F.3d 93, 104–05 (2d Cir. 1998)).

But the Court need not delve too far into witness credibility because we can rely on exhibits entered in the record. The jury found that Plaintiffs received effective communication, but all four Plaintiffs received written consent forms in English—without the benefit of an ASL interpreter. As recognized by the Court, those consent forms are "not valid," (Aug. 13th Tr. 195:11–18), and as explained by legal enforcement guidelines on the NYCHRL, a hospital "must provide a qualified sign language interpreter to a patient who is deaf as a reasonable accommodation because, in order for a patient in a hospital setting to 'enjoy the right or rights in question,' they require in-depth, time-sensitive, and nuanced communications with medical personnel. A patient will therefore not be able to enjoy the right or rights in question without an interpreter." NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Disability, *available at* https://on.nyc.gov/2zu4LKj (last visited Sept. 20, 2019), at 64–65.

In fact, the Court should embrace the rationale in *Borngesser v. Jersey Shore Medical Center*, 774 A.2d 615, 617, 619, 625–26 (N.J. Super. Ct. App. Div. 2001), in which the New Jersey Superior Court, Appellate Division, granted a motion for a new trial to a deaf hospital patient contending that "the verdict was against the weight of the evidence" because the hospital failed to

provide interpreters for consent forms. That court underscored "the clear evidence of substantial communication difficulties" based on circumstances that Plaintiffs also experienced here:

> [A] sign language interpreter may have been required during those instances when communication concerning [the patient's] medical care and treatment occurred, such as *when her consents for the catheterization and defibrillator were obtained*, and during the discussions with the doctors concerning those procedures. These are the critical aspects of [the patient's] hospitalizations during which the [federal] effective communication protections became essential.

*Id.* at 625–26 (emphasis added). Thus, the court affirmed the verdict for the patient's "everyday routine nursing case" but ordered a new trial "as to the effectiveness of . . . communication" for "those periods during her hospitalizations when communication between the doctors and other staff concerning her medical care and treatment occurred"—such as informed consent and the discussions that should have followed. *See id.* at 629. Like the *Borngesser* patient, Plaintiffs are entitled to a new trial on these grounds as well.

As the Court weighs the evidence without construing any of it in favor of Defendant, *see Crawford*, 2015 U.S. Dist. LEXIS 38737 at *20, it is important to keep in mind the purpose of the ADA and its counterparts. The United States Department of Justice—the agency responsible for enforcing the ADA, *Bragdon v. Abbott,* 524 U.S. 624, 646 (1998)—issued its original ADA promulgating regulations on July 26, 1991 (effective January 26, 1992), explaining its intentions for effective communication:

> [T]he Department gave as an example the situation where a note pad and written materials were insufficient to permit effective communication in a doctor's office when the matter to be decided was whether major surgery was necessary. Many commenters objected to this statement, asserting that it gave the impression that only decisions about major surgery would merit the provision of a sign language interpreter. The statement would, as the commenters also claimed, convey the impression to other public accommodations that written communications would meet the regulatory requirements in all but the most extreme situations. The

> Department, when using the example of major surgery, did not intend to limit the provision of interpreter services to the most extreme situations.
>
> \*   \*   \*
>
> It is not difficult to imagine a wide range of communications involving areas such as health, legal matters, and finances that would be sufficiently lengthy or complex to require an interpreter for effective communication.

Final Rule, Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544 (July 26, 1991); *see also Majocha v. Turner*, 166 F. Supp. 2d 316, 322–23 (W.D. Pa. 2001) ("Whether [a] procedure is considered 'major surgery' is not that important to this analysis; the point is that [a] surgical procedure, no matter how routine it may be to [hospitals], is not routine to the [patients], and is obviously much closer to major surgery than to buying a book."). Later in an ADA Business Brief, the DOJ underscored the difference between note writing and ASL interpreters. Note writing, the DOJ explained, "will likely be effective communication for brief and relatively simple face-to-face conversations, such as a visitor's inquiry about a patient's room number or a purchase in the gift shop or cafeteria." ADA Business BRIEF: Communicating with People Who Are Deaf or Hard of Hearing in Hospital Settings, available at https://www.ada.gov/hospcombr.htm (last visited Sept. 20, 2019). But other situations may call for an ASL interpreter, such as "providing a diagnosis, prognosis, and recommendation for treatment" and "obtaining informed consent for treatment." *Id.*

All in all, Plaintiffs required ASL interpreters for their consent forms, among other things, but Defendant failed to provide effective communication. Thus, for the reasons here and described above, Plaintiffs are entitled to a new trial.

## CONCLUSION

Plaintiff's Motion should be granted. They are either entitled to judgment as a matter of law under Fed. R. Civ. P. 50(b) or in the alternative a new trial under Fed. R. Civ. P. 59(a)(1)(A).

Dated: September 20, 2019

Respectfully submitted,

By:

Andrew Rozynski
David John Hommel
Adriana Alcalde (admitted *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
dhommel@eandblaw.com
aalcalde@eandblaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On September 20, 2019, I electronically filed this document with the Clerk's Office using

the CM/ECF system, which then sent a Notice of Electronic Filing to all registered attorneys.

Dated: September 20, 2019                          Respectfully submitted,

By:

Andrew Rozynski
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
*Attorneys for Plaintiffs*